IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LM INSURANCE CORPORATION,

    Plaintiff,

    v.

SMART FRAMING CONSTRUCTION LLC, et al.,

    Defendants.

Case No. 24-2097-JAR-ADM

**MEMORANDUM AND ORDER**

Plaintiff LM Insurance Corporation ("LM") filed this declaratory judgment action against defendants Smart Framing Construction LLC ("Smart Framing") and Angel Gutierrez-Castillo ("Gutierrez-Castillo"). LM asks the court to declare that the workers compensation and employers liability insurance policy that it issued to Smart Framing ("the LM Policy") does not cover workers compensation claims that Gutierrez-Castillo filed because Gutierrez-Castillo was not a Smart Framing employee at the time he was injured.

National Liability & Fire Insurance Company ("National Liability") has filed a motion to intervene in the action as a party defendant. (ECF 14.) National Liability issued a workers compensation and employers liability insurance policy (the "National Liability Policy") to Alleged Fastframe Construction, LLC ("Fastframe"), the general contractor that hired Smart Framing as a subcontractor to do construction work at the site where Gutierrez-Castillo was injured. National Liability contends that the outcome of this case could substantially impair or impede its interests because if the court declares Gutierrez-Castillo is not a Smart Framing employee covered by the LM Policy, then the Kansas Workers Compensation Act would deem Fastframe to be Gutierrez-Castillo's statutory employee, such that National Liability must provide coverage. LM opposes

the motion, largely on the ground that National Liability could bring a separate action seeking a declaration that the National Liability Policy provides no coverage. The clerk has entered default against Smart Framing and Gutierrez-Castillo, and they have not responded to the motion.

The court finds that National Liability meets the standard for intervention of right and also easily meets the standard for permissive intervention. Specifically, a decision regarding the LM Policy would impact National Liability because it could trigger National Liability's coverage obligations. As to permissive intervention, National Liability's proposed intervenor answer shares common questions of law and fact with LM's complaint because both seek a declaration of Gutierrez-Castillo's employment status on the date he was injured.

## I. BACKGROUND

Fastframe is a construction company. In 2023, it hired Smart Framing as a sub-contractor to do construction work at a project on Lake Winnebago, Missouri. On February 27, 2023, Gutierrez-Castillo was badly injured while working on the project in an accident at the jobsite. Gutierrez-Castillo subsequently filed claims for workers compensation benefits under Kansas law, naming as respondents Smart Framing and Fastframe, and as insurers LM and National Liability. (ECF 16-2.) Gutierrez-Castillo sent a demand letter to LM. (ECF 16-1.)

LM began paying (and continues to pay) workers compensation benefits to Gutierrez-Castillo under the policy it issued to Smart Framing. But, according to LM's complaint, it has since learned that Smart Framing's owner, Cesar Rocha ("Rocha"), paid Gutierrez-Castillo, rather than Smart Framing, for his work on the jobsite. LM asks the court to declare that because Smart Framing did not pay Gutierrez-Castillo, LM has no obligation under the LM Policy to defend or indemnify Smart Framing with respect to Gutierrez-Castillo's workers compensation claim or to pay any further workers compensation benefits with respect to such claim. Neither Smart Framing

nor Gutierrez-Castillo filed a response to LM's complaint, and the Clerk entered default against each on June 27 and July 18, respectively.

On July 19, National Liability filed its motion to intervene. National Liability seeks to file a proposed answer that asserts Gutierrez-Castillo was Smart Framing's employee at the time of his accident. National Liability states that, should the court declare otherwise in this action, Gutierrez-Castillo would look to National Liability for workers compensation payment. On August 9, Gutierrez-Castillo sent National Liability a copy of his original demand letter to LM and explained, "in the event that LM escapes liability . . . please also consider this a demand" to National Liability. (ECF 16-3.) National Liability asserts that if the court declares Gutierrez-Castillo was not Smart Framing's employee, then Fastframe becomes Gutierrez-Castillo's "statutory employer" obligated to pay workers compensation benefits under Kan. Stat. Ann. § 44-503; and National Liability, as Fastframe's insurer, would pay the benefits.

## II.   ANALYSIS

Federal Rule of Civil Procedure 24 recognizes two types of intervention: (a) intervention of right, and (b) permissive intervention. National Liability moves for intervention of right. For the reasons explained below, the court finds that National Liability is entitled to intervene as a matter of right and also would easily meet the standard for permissive intervention. In addition, National Liability has proven that it has Article III standing to enter this federal court.

### A.   Intervention of Right

Under Rule 24(a)(2), the moving party must establish the following to intervene as of right:

> (1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties.

*Kane Cty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019); *see also* FED. R. CIV. P. 24(a)(2) (setting forth the same standard).  The Tenth Circuit "has historically taken a liberal approach to intervention [of right] and thus favors the granting of motions to intervene."  *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017).  "The central concern in deciding whether intervention [of right] is proper is the practical effect of the litigation on the applicant for intervention."  *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (en banc).  The court addresses each of the intervention requirements below.

### 1. National Liability's motion is timely

The court evaluates timeliness "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."  *Kane*, 928 F.3d at 890-91. "Prejudice" in this context means prejudice caused by the would-be intervenor's delay, not the practical prejudice that inevitably comes from litigating with an additional party.  *See id.*  LM filed this case on March 18, and National Liability moved to intervene on July 19, just a few days after the Clerk entered default against the named defendants.  National Liability therefore moved to intervene at an early case stage, before a scheduling conference and before discovery began.  The court easily finds that National Liability's motion is timely and that LM will not be prejudiced by the timing of National Liability's intervention.  This element is established.

### 2. National Liability claims an interest that could be impaired by the litigation

The court addresses the second and third elements together because they are closely related. To satisfy these elements, the moving party bears a "minimal" burden to show that it has an interest that could be adversely affected by the litigation.  *Id.* at 891; *see also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (describing the burden as minimal).  "Whether

4

an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Kane*, 928 F.3d at 889). The interest must be direct, substantial, and legally protectable—"one that would be impeded by the disposition of the action." *Id.* at 1112-22. But the threshold for finding the requisite protectable interest is not high, and the mere threat of economic injury is sufficient for granting intervention. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

National Liability asserts that if the court determines Gutierrez-Castillo was not a Smart Framing employee and grants LM judgment, the Kansas Workers Compensation Act would deem Fastframe to be Gutierrez-Castillo's "statutory employer," thus triggering National Liability's "obligation to provide workers compensation benefits through its insured Fastframe." (ECF 16, at 2 (citing KAN. STAT. ANN. § 44-503).)[1] Indeed, § 44-503 "extends the application of the Kansas

---

[1] Subcontracting under the Kansas Workers Compensation Act is addressed by this statute:

> Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed. For the purposes of this subsection, a worker shall not include an individual who is a self-employed subcontractor.

Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured workers, but rather are 'statutory employers.'" *Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000).  Under the Act, principal contractors, *i.e.*, "statutory employers," are liable for workers compensation coverage "[i]n the event that the payment of compensation is not secured or is otherwise unavailable or in effect." *Id.* at 419 (quoting KAN. STAT. ANN. § 44-503(g)). Thus, Fastframe has "contingent liability . . . to either provide compensation itself or to see that such compensation is provided by [Gutierrez-Castillo's] direct employer[]." *Id.*; *see also Schmidt v. Trademark, Inc.*, 493 P.3d 958 (Kan. App. 2021), *aff'd,* 506 P.3d 267 (Kan. 2022) (holding a construction general contractor's "responsibility to pay benefits is a substitutionary role" that takes effect "if the subcontractor fails to provide workers compensation benefits to its employees"). Given Fastframe's contingent liability to pay Gutierrez-Castillo's workers compensation benefits, and National Liability's obligation to Fastframe, the court finds that National Liability's interests would be impaired or impeded absent intervention.  In short, the court's ruling could trigger National Liability's duties and obligations under KAN. STAT. ANN. § 44-503 and the National Liability Policy.

LM argues the court should deny intervention because the outcome of this case would not bind National Liability, stating "adjudication of L[M]'s rights under its policy has no legal effect upon National Liability's position with respect to its policy and, by means of a separate action, it remains free to seek its own declaration that its policy affords no coverage if it believes that to be the case." Although it may be true that National Liability could file suit against Fastframe to seek a declaratory judgment that the National Liability Policy does not obligate it to provide workers compensation coverage for Gutierrez-Castillo, that is not a determinative factor.  Rather, the question is whether National Liability has an interest that, as a practical matter, could be impaired

6

by this litigation. *See WildEarth Guardians*, 573 F.3d at 995 ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). Of this, there can be no doubt. Gutierrez-Castillo already has served National Liability with a demand to pay his benefits should LM "escape" such liability.

Thus, National Liability has demonstrated an interest that could be impaired if the case proceeds without it. National Liability's status as a contingent insurer if Gutierrez-Castillo cannot secure benefits from subcontractor Smart Framing through its insurer LM makes this case similar to cases in which excess insurers are permitted to intervene to protect their interests in actions involving primary insurers. For example, in *Liberty Mutual Fire Insurance Co. v. Lumber Liquidators, Inc.*, the court found that an excess insurer had an interest in the suit because its policies covered the same claims that were the subject of the action, and therefore resolution of the action could impact the excess insurers by triggering coverage obligations. 314 F.R.D. 180, 185 (E.D. Va. 2016). The court in *Liberty Mutual* separately found that the excess insurers' interest could further be impaired if they were forced to relitigate issues decided in the primary-insurance-coverage action. *Id.*; *see also Felman Prod., Inc. v. Indus. Risk Insurers*, No. CIV.A. 3:09-0481, 2009 WL 5064058, at *3 (S.D.W. Va. Dec. 16, 2009) (finding a "significantly protectible interest" and allowing an excess insurer to intervene where its excess coverage policy was potentially triggered because the amount of damages pleaded exceeded primary-insurance coverage); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 159 (S.D.N.Y. 2000) (permitting intervention in declaratory judgment action of insurer who was "not making a claim under the policy, but [was] seeking to intervene in this Court's determination of [other insurer's] obligations because the scope of its own obligations may depend upon the outcome"); *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, No. 14-CV-5227, 2015 WL 5676786, at

*11 (E.D.N.Y. Sept. 24, 2015) (permitting insurer to intervene where "if the Court determines that [party insurer] ha[d] a coverage obligation under the Policy, [movant's] own obligations may be alleviated, in whole or in part"). For similar reasons, and given the Tenth Circuit's liberal approach toward intervention, the court finds National Liability has demonstrated that its interests could be impaired here.

### 3. No other party adequately represents National Liability's interests

The burden to establish inadequate representation by existing parties is "minimal." *Barnes*, 945 F.3d at 1124. If the parties' interests are identical, the court may presume adequate representation. *Kane*, 928 F.3d at 892. But the possibility of divergent interests is enough to satisfy this element and, to that end, the moving party need only show the potential for inadequate representation. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017). Here, Smart Framing and Gutierrez-Castillo are in default and are not participating in the case. LM is not representing National Liability's interests because it seeks the opposite outcome as National Liability. Thus, National Liability has met its minimal burden to establish inadequate representation by existing parties.

The court therefore grants the motion to intervene because National Liability has satisfied the requirements for intervention of right under Rule 24(a)(2).

### B. Permissive Intervention

The court also finds that National Liability easily meets the requirements for permissive intervention under Rule 24(b)(1)(B), which permits intervention by a movant that "has a claim or defense that shares with the main action a common question of law or fact." *See also Arney v. Finney,* 967 F.2d 418, 421 (10th Cir. 1992) ("Permissive intervention is a matter within the sound discretion of the district court." (quotations omitted)). National Liability's position is that

Gutierrez-Castillo was Smart Framing's employee entitled to workers compensation under the LM Policy (which would thereby relieve National Liability from liability). (*See* ECF 14-1, at 3 (National Liability's proposed intervenor answer asserting that LM has "failed to state a claim upon which declaratory relief can be granted, in that . . . Castillo was an employee of Defendant Smart Framing Construction LLC on the date he was injured . . . [and LM's] workers compensation policy provides coverage to [Gutierrez-Castillo], employee of Defendant Smart Framing").) In this action, LM asks the court to declare the opposite, *i.e.*, that "[t]he Policy does not afford any coverage for Castillo's workers compensation claim, in that he was not employed by [Smart Framing] at the time of the Accident." (ECF 1, at 4.) Who employed Gutierrez-Castillo is the significant common question at the heart of both positions. Moreover, the court finds no undue delay or prejudice for largely the same reasons discussed above when considering the timeliness of National Liability's motion. *See* FED. R. CIV. P. 24(b)(3) (permissive intervention requires the court to determine whether "intervention will unduly delay or prejudice the adjudication of the original parties' rights").

### C. Standing to Intervene

LM next argues that National Liberty lacks standing to intervene because it is not seeking redress of its own injury. "[A]n intervenor as of right must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by an existing party." *Kane*, 928 F.3d at 886 (internal quotations and citation omitted). "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Id.* at 888. An "allegation of future injury may suffice

if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

National Liberty has adequately demonstrated its standing. As discussed above, if the court declares the LM Policy does not cover Gutierrez-Castillo's claims, then National Liberty must step in to cover the statutory employer, Fastframe. This is a concrete, impending injury—made even more so by Gutierrez-Castillo's recent demand letter—that can be redressed in this action by the court declining to enter declaratory judgment in LM's favor.

### D. LM's Other Arguments Against Intervention

LM makes two other arguments against National Liability's intervention, neither of which persuade the court. First, LM asserts that National Liability's motion to intervene violates D. Kan. Rule 7.1(a), but LM does not suggest what provision of the Rule is violated or in what manner. The court will not consider this conclusory argument. Second, LM argues that a determination of National Liability's coverage liability is not ripe for determination because Gutierrez-Castillo has not looked to National Liberty for substitutionary coverage. However, National Liability has since placed in the record Gutierrez-Castillo's demand letter for backup coverage "in the event that LM escapes liability," thereby mooting this argument. (ECF 16-3, at 1.)

### III. CONCLUSION

For the reasons stated above, National Liability has established that it is entitled to intervene as a matter or right and also would easily meet the test for permissive intervention. National Liability has Article III standing. Thus, the court grants National Liability's motion to intervene. National Liability must promptly file its intervenor answer as a separate docket entry in this case.

**IT IS THEREFORE ORDERED** that National Liability's Motion to Intervene (ECF No. 14) is granted.  National Liability must file its intervenor answer (ECF 14-1) as a separate docket entry in this case within two business days from the date of this order.

**IT IS SO ORDERED.**

Dated September 10, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
