IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LM INSURANCE CORPORATION,

      Plaintiff,

      v.

SMART FRAMING CONSTRUCTION LLC, et al.,

      Defendants.

Case No. 2:24-CV-02097-JAR-ADM

**MEMORANDUM AND ORDER**

Plaintiff LM Insurance Corporation ("LM") brings this declaratory judgment action against Defendants Smart Framing Construction, LLC ("Smart Framing") and Angel Gutierrez Castillo seeking a determination that an insurance policy it issued to Smart Framing does not provide coverage for a workers' compensation claim by Gutierrez Castillo. Nonparty National Liability & Fire Insurance Company ("National Liability") filed a motion to intervene,[1] and Magistrate Judge Angel D. Mitchell issued a Memorandum and Order on September 10, 2024, granting that motion.[2] This matter is now before the Court on LM's Motion for Review by District Judge (Doc. 20). The motion is fully briefed, and the Court is prepared to rule. For the reasons set forth below, the Court denies LM's motion.

**I.    Background**

On March 18, 2024, LM filed this declaratory judgment action against Smart Framing and Gutierrez Castillo. LM's Complaint seeks a determination that a workers' compensation and employer's liability insurance policy it issued to Smart Framing, a subcontractor, provides no

---

[1] Doc. 14.

[2] Doc. 17.

coverage for a workers' compensation claim by Gutierrez Castillo, an individual who was injured while working on a jobsite. LM contends that it is not obligated to cover the claim because Gutierrez Castillo was not a Smart Framing employee at the time he was injured. Neither Smart Framing nor Gutierrez Castillo filed a response to LM's Complaint, and the Clerk entered default against each of them.[3]

Fast Frame Construction, LLC ("Fast Frame") is the principal contractor that hired Smart Framing for the job where Gutierrez Castillo was injured. National Liability insured Fast Frame under a workers' compensation and employer's liability policy. On July 19, 2024, National Liability filed a Motion to Intervene in this declaratory judgment action, "to protect its interest and to declare that [LM]'s policy of insurance does afford coverage to Defendants Gutierrez Castillo and Smart Framing for Defendant Gutierrez Castillo's injuries."[4] Gutierrez Castillo sent National Liability a demand letter "in the event that LM escapes liability for [Gutierrez Castillo's claim]."[5] Judge Mitchell granted National Liability's motion, finding that "National Liability is entitled to intervene as a matter of right and also would easily meet the standard for permissive intervention."[6] LM filed a Motion for Review by District Judge requesting this Court to set aside Judge Mitchell's September 10 Order.

## II.   Standard of Review

Fed. R. Civ. P. 72 allows a party to provide specific, written objections to a magistrate judge's order or recommendation. In reviewing objections to a magistrate judge's

---

[3] Docs. 10, 13.

[4] Doc. 14 at 3.

[5] Doc. 16-3 at 1.

[6] Doc. 17 at 3.

recommendation on dispositive motions, the district judge applies a de novo standard of review.[7] "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."[8]

With respect to a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a de novo review. Instead, district courts apply a more deferential standard under which the moving party must show that the magistrate judge's order is "clearly erroneous or is contrary to law."[9] "A magistrate judge's order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'"[10] The Court must affirm the magistrate judge's order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."[11]

Here, the Court need not decide which standard is applicable because LM's Motion for Review should be denied under either standard.

## III. Discussion

National Liability contends that it is entitled to intervene in this action pursuant to Fed. R. Civ. P. 24. Specifically, National Liability argues that it has a financial stake in the outcome of this action because it insures Gutierrez Castillo's statutory employer, Fast Frame, and is contingently liable to pay Gutierrez Castillo's claims if LM does not. National Liability argues

---

[7] Fed. R. Civ. P. 72(b)(3).

[8] *Id.*

[9] Fed. R. Civ. P. 72(a); *see Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).

[10] *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, 741 F. Supp. 3d 949, 953 (D. Kan. 2024) (quoting *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011)).

[11] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) (noting that the district court will generally defer to a magistrate judge and overrule only for a clear abuse of discretion).

that its interests are not represented in this action if it is not permitted to intervene. LM responds that National Liability should not be permitted to intervene because National Liability has not satisfied the requirements for intervention as of right, lacks standing, and has not established a dispute that is ripe for review.

Judge Mitchell granted National Liability's motion to intervene concluding that National Liability satisfies the requirements for intervention as of right and permissive intervention, has standing to intervene, and has established a dispute that is ripe for review. The Court agrees with Judge Mitchell's analysis.

### A. Intervention as of Right

Fed. R. Civ. P. 24 contemplates two grounds for intervention: intervention of right under Rule 24(a), and permissive intervention under Rule 24(b). The nonparty seeking to intervene bears the burden of demonstrating that it has satisfied the conditions necessary under either ground for intervention.[12]

Intervention as of right is mandatory when the applicant satisfies each of four conditions: "(1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties."[13] Here, National Liability meets its burden of establishing intervention as of right.

#### 1. Timeliness

First, the Court considers whether National Liability's motion was timely. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the

---

[12] *See United States v. Albert Inv. Co.*, 585 F.3d 1386, 1390 (10th Cir. 2009).

[13] *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005) (citing *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996)).

length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'"[14]

LM filed this declaratory judgment action on March 18, 2024. National Liability contends that it learned of this action on July 16, 2024, when Gutierrez Castillo's attorney told National Liability's attorney about it over the phone. Gutierrez Castillo's attorney emailed National Liability's attorney a copy of LM's Motion for Entry of Default Judgment the next day on July 17.[15] National Liability filed its motion to intervene on July 19, 2024, just two days later and still at an early stage in this case. LM has not and cannot show that it was prejudiced by the timing of National Liability's motion to intervene. Further, LM has not identified, and the Court has not independently found, any unusual circumstances that makes National Liability's motion untimely. Thus, National Liability meets its burden of establishing the first element for intervention as of right.

### 2. National Liability's Interests

The Court addresses the next two conditions together because they are closely intertwined.[16] These conditions look to whether National Liability has an interest relating to the property or transaction that may, as a practical matter, be impaired or impeded by the disposition of this action.[17] To satisfy these elements, "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is

---

[14] *Kane County v. United States*, 928 F.3d 877, 890–91 (10th Cir. 2019) (quoting *Utah Ass'n of Cntys.*, 255 F.3d 1246, 1250 (10th Cir. 2001)).

[15] Doc. 39-1.

[16] *See San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007).

[17] *Utah Ass'n of Cntys.*, 255 F.3d at 1253.

minimal."[18]  "The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."[19]  If the Court's determination of this action without National Liability's intervention would substantially affect National Liability in a practical sense, National Liability should be entitled to intervene.[20]

National Liability argues that its interest in this action stems from its obligations under Kansas's workers' compensation laws.  National Liability explains that if LM is not required to pay Gutierrez Castillo's workers' compensation claims, K.S.A. § 44-503 would require National Liability, as the principal contractor's insurer, to pay the claims.  National Liability contends that "[LM]'s fatal flaw in framing the facts is it ignores the fundamental way . . . K.S.A. § 44-503 works."[21]

LM responds that National Liability's interests are distinct and unrelated to this action which only concerns LM's obligations under its policy issued to Smart Framing.  LM argues that any adjudication of its rights under its policy issued to Smart Framing has no legal effect upon National Liability's position with respect to National Liability's policy issued to Fast Frame.  LM contends that National Liability's rights can be vindicated in its own, separate declaratory judgment action against Fast Frame and Gutierrez Castillo.  LM further argues that National Liability fails to explain why it would be wrongful for it to afford benefits to Gutierrez Castillo under its policy issued to Fast Frame.

K.S.A. § 44-503 states in relevant part:

> (a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of the principal's

---

[18] *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (quoting *Utah Ass'n of Cntys.*, 255 F.3d at 1253).

[19] *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

[20] *See id.*

[21] Doc. 24 at 3.

trade or business or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the worker under the employer by whom the worker is immediately employed.  For the purposes of this subsection, a worker shall not include an individual who is a self-employed subcontractor.

. . .

(g) Notwithstanding any other provision of this section, in any case where the contractor (1) is an employer who employs employees in an employment to which the act is applicable, or has filed a written statement of election with the director to accept the provisions of the workers compensation act pursuant to subsection (b) of K.S.A. 44-505, . . .  to the extent of such election, and (2) has secured the payment of compensation as required by K.S.A. 44-532, . . . for all persons for whom the contractor is required to or elects to secure such compensation, as evidenced by a current certificate of workers compensation insurance, by a certification from the director that the contractor is currently qualified as a self-insurer under that statute, or by a certification from the commissioner of insurance that the contractor is maintaining a membership in a qualified group-funded workers compensation pool, then, the principal shall not be liable for any compensation under this or any other section of the workers compensation act for any person for which the contractor has secured the payment of compensation which the principal would otherwise be liable for under this section and such person shall have no right to file a claim against or otherwise proceed against the principal for compensation under this or any other section of the workers compensation act. In the event that the payment of compensation is not secured or is otherwise unavailable or in effect, then the principal shall be liable for the payment of compensation.  No insurance company shall charge a principal a premium for workers compensation insurance for any liability for which the contractor has secured the payment of compensation.

"The statute extends the application of the Kansas Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured workers, but rather are 'statutory employers.'"[22] "The effect of subsection (g) is that if a subcontractor has secured the payment of workers compensation benefits for its employees, the principal contractor is not liable for such benefits. Instead, the principal contractor is only secondarily liable for payment of benefits in the event that the subcontractor fails to provide benefits."[23] In other words, "[w]here coverage is secured by the subcontractor, the principal contractor remains only contingently liable."[24]

      Here, LM ignores this special relationship between subcontractors and principal contractors in workers' compensation claims. As a result of the statutory framework discussed above, Fast Frame, the principal contractor and statutory employer, is contingently liable for Gutierrez Castillo's workers' compensation claims if Smart Framing, the subcontractor, fails to pay them. Consequently, National Liability, Fast Frame's insurer, is contingently liable for Gutierrez Castillo's workers' compensation claims if LM, Smart Framing's insurer, fails to pay them. Thus, National Liability has an interest in ensuring that LM pays Gutierrez Castillo's claims if it is required to do so under its policy issued to Smart Framing. If it was determined that LM was not obligated to pay for Gutierrez Castillo's claims because of Defendants' default, National Liability could suffer economic injury. National Liability's interests thus could be impaired if the case proceeds without it.

---

[22] *Robinett v. Haskell*, 12 P.3d 411, 414 (Kan. 2000) (quoting *Bright v. Cargill, Inc.*, 837 P.2d 348 (1992)).
[23] *Id.* at 415–16.
[24] *Id.* at 419.

LM argues that intervention should not be permitted because this case is like *Discover Property & Casualty Ins. Co. v. Collective Brands, Inc.*[25] There, Discover sought a judicial declaration that it did not have a duty to defend or indemnify its insured, Payless. Discover moved to include Zurich, who insured Payless after Discover's policy terminated, as a necessary and indispensable party to the case. The court concluded that Zurich was not a necessary and indispensable party because the case was brought to determine Discover's obligations under its policy and Zurich could seek its own determination regarding its separate policy in a separate action.[26] The court explained that Zurich's obligations under its policy was of no relevance to the case because "if Zurich's policies and Discover's Policies exclude certain actions from coverage, then defendants will not be covered."[27] However, LM's reliance on *Discover Property* is misplaced. The two insurers in that case did not have a relationship where one insurer would be secondarily or contingently liable for Payless's claim if the other failed to pay the claim. Here, it cannot be the case, like in *Discover Property*, that Gutierrez Castillo will not be covered under either insurer's policy. National Liability will be liable for the claims if LM is not.

This case is similar to cases where excess insurers are permitted to intervene to protect their interests in cases involving the primary insurers. For example, in *Liberty Mutual Fire Ins. Co. v. Lumber Liquidators, Inc.*, an insurer sought a declaratory judgment that its policies did not obligate it to defend or indemnify Lumber Liquidators.[28] The court permitted excess insurers to intervene because "[r]esolution of the current action as is will immediately impact the excess insurers by triggering excess coverage obligations if the Court finds the current Plaintiffs owe

---

[25] No. 07-2577-JAR, 2008 WL 2783144 (D. Kan. July 15, 2008).

[26] *Id.* at *7.

[27] *Id.*

[28] 314 F.R.D. 180 (E.D. Va. 2016).

primary coverage to Defendant."[29]  Similarly, here, LM's coverage, or lack thereof, of Gutierrez Castillo's claims triggers National Liability's coverage obligations.

National Liability has accepted that it is contingently liable for Gutierrez Castillo's claims if LM fails to cover them.[30]  Therefore, National Liability does not need to make a third-party claim against its insured, Fast Frame, to establish that its policy does not afford coverage for Gutierrez Castillo's claims.  National Liability concedes that it does.  Further, the Court does not need to apply the *Hanna* test to determine "whether the work covered by a contract is part of the principal's trade or business."[31]  National Liability concedes that the work at issue in this action is.

Thus, National Liability meets its burden of establishing the second and third elements of intervention as of right.

### 3. Adequate Representation

Lastly, the Court considers whether National Liability's interests are adequately represented by existing parties.  The Tenth Circuit has "held that the burden to satisfy this condition is 'minimal,' and that '[t]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants.'"[32]

National Liability's interests are not adequately represented by any party in this action.  Both Defendants are in default and are not participating in this action.  LM does not represent National Liability's interest and, in fact, has interests opposite to National Liability's.  National

---

[29] *Id.* at 186.

[30] Doc. 39 at 5 ("Intervenor . . . accepts that it would have coverage for Defendant Gutierrez-Castillo, and non-party Fast Frame as the statutory employer if this Court declares that LM has no coverage.").

[31] *Hanna v. CRA, Inc.*, 409 P.2d 786, 789 (Kan. 1966).

[32] *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (quoting *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844–45 (10th Cir. 1996)).

Liability contends that LM is obligated to pay Gutierrez Castillo's claims and LM contends that it is not. Thus, National Liability meets its burden of establishing the fourth and final element of intervention as of right.

### B. Permissive Intervention

LM's motion for review does not contend that Judge Mitchell erred in concluding that National Liability satisfies the test for permissive intervention. Indeed, LM's motion and reply in support of its motion do not even acknowledge Judge Mitchell's conclusion with respect to permissive intervention. Nonetheless, the Court will conduct its own permissive intervention analysis.

Under Rule 24(b)(1)(B), on timely motion, a court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." The decision whether to grant a motion for permissive intervention is within the district court's sound discretion.[33] In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights."[34] Permissive intervention should be denied when the potential intervenor "would only clutter the action unnecessarily."[35]

Here, LM brings this declaratory judgment action to assert that the policy it issued to Smart Framing provides no coverage for Gutierrez Castillo's workers' compensation claims. Specifically, LM argues that Gutierrez Castillo was not employed by Smart Framing when he was injured. National Liability, as a statutory employer, seeks to intervene, asserting that LM's

---

[33] *See City of Stillwell v. Ozarks Rural Elec. Co-op Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996).

[34] Fed. R. Civ. P. 24(b)(3).

[35] *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992) (permissive intervention properly denied when it "would only clutter the action unnecessarily").

11

policy issued to Smart Framing provides coverage for Gutierrez Castillo's workers' compensation claim. Specifically, National Liability argues that Gutierrez Castillo was employed by LM when he was injured. Therefore, LM's and National Liability's positions require answering the same common questions: whether LM is obligated to pay Gutierrez Castillo's workers' compensation claims, and, more specifically, whether Gutierrez Castillo was employed by LM when he was injured. National Liability's intervention will significantly contribute to full development of these underlying issues, especially considering the defendants' default and failure to participate in this case. Thus, National Liability satisfies the test for permissive intervention.

### C. Standing

The concept of constitutional standing is derived from the case or controversy requirement of Article III of the Constitution.[36] "Article III's requirements apply to *all* intervenors, whether they intervene to assert a claim or defend an interest."[37] To establish standing, a nonparty looking to intervene must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action . . .; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[38]

In addition, prudential standing is a judicially self-imposed limit on the exercise of federal jurisdiction "founded in concern about the proper—and properly limited—role of the courts in a democratic society."[39] The three traditional prudential standing principals are "[1] the

---

[36] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[37] *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017).

[38] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 1180–81 (2000).

[39] *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

general prohibition on a litigant's raising another person's legal rights, [2] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and [3] the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."[40]

Here, National Liability satisfies the requirements for Article III standing. National Liability has identified an imminent injury in fact: potential economic harm if required to pay Gutierrez Castillo's workers' compensation claim. This injury is not conjectural or hypothetical, as Gutierrez Castillo has already sent a demand letter to National Liability.[41] This injury is fairly traceable to the challenged action because National Liability's obligations are only triggered if it is determined that LM is not required to pay Gutierrez Castillo's claims—a matter directly at issue in this action. And lastly, it is likely that National Liability's interest will be redressed by a favorable decision in this action. A favorable decision for National Liability would be a determination that LM is obligated to pay Gutierrez Castillo's claims, which would mean that National Liability is not liable for the claims.

Moreover, National Liability satisfies the requirements for prudential standing. National Liability seeks to intervene to protect its own legal rights under its own insurance policy and Kansas's workers' compensation laws.

### D. Ripeness

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"[42] Generally,

---

[40] *Id.*

[41] Doc. 16-3.

[42] *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)).

13

courts use a two-factor test to determine whether a controversy is ripe for review.[43] Under the first factor, courts evaluate the fitness of the issue for judicial resolution by focusing on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[44] Under the second factor, courts evaluate the hardship to the parties of withholding court consideration by asking "whether the challenged action creates a direct and immediate dilemma for the parties."[45]

LM argues that any dispute raised by National Liability is not ripe for determination because it is "pure speculation" that Gutierrez Castillo would look to National Liability for coverage if LM were not obligated to pay Gutierrez Castillo's claims. However, as noted in Judge Mitchell's September 10 Order, Gutierrez-Castillo sent National Liability a demand letter putting National Liability on notice that he will pursue claims against National Liability if LM escapes liability. Gutierrez Castillo's demand letter eliminates any speculation as to whether he would pursue claims against National Liability if necessary. Thus, National Liability has raised a dispute that is ripe for determination.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff LM Insurance Corporation's Motion for Review by District Judge (Doc. 20) is **denied**.

**IT IS SO ORDERED.**

Dated: April 1, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[43] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

[44] *Id.* (quoting 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532 at 112).

[45] *Jackson v. Whetsel*, 388 F. App'x 795, 802 (10th Cir. 2010).