**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LM INSURANCE CORPORATION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:24-CV-02097-JAR** |
| **SMART FRAMING CONSTRUCTION LLC, et al.,** | |
| **Defendants**, | |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff LM Insurance Corporation ("LM") brings this declaratory judgment action against Defendants Smart Framing Construction LLC and Angel Gutierrez Castillo ("Castillo"), seeking a determination that a workers' compensation insurance policy LM issued to Smart Framing Construction LLC does not provide coverage for a workers' compensation claim made by Castillo. Neither Smart Framing Construction LLC nor Castillo responded to the Complaint, and the Clerk entered default against them on June 27, 2024,[1] and July 18, 2024,[2] respectively.

Shortly thereafter, National Liability & Fire Insurance Company ("National Liability") moved to intervene as a party defendant.[3] National Liability issued a workers' compensation and employers' liability policy to Fastframe Construction LLC ("Fastframe"), the general contractor on the project where Castillo suffered the injury giving rise to the workers' compensation claim at issue in this case. National Liability sought to intervene because, if LM's workers' compensation insurance policy does not cover Castillo's claim, Fastframe, as the general

---

[1] Doc. 10.

[2] Doc. 13.

[3] Doc. 14.

contractor on the project, may be treated as Castillo's "statutory employer" under the Kansas

Workers' Compensation Act, potentially triggering National Liability's coverage obligations.[4]

Magistrate Judge Angel D. Mitchell granted National Liability's motion to intervene on

September 10, 2024.[5]

This matter is now before the Court on LM's Motion for Summary Judgment (Doc. 75)

and National Liability's Motion for Summary Judgment (Doc. 77).  The motions are fully

briefed, and the Court is prepared to rule.  For the reasons explained below, the Court grants

LM's motion and denies National Liability's motion.

## I.       Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[6]  In

applying this standard, the Court views the evidence and all reasonable inferences therefrom in

the light most favorable to the non-moving party.[7]  "There is no genuine issue of material fact

unless the evidence, construed in the light most favorable to the non-moving party, is such that a

reasonable jury could return a verdict for the non-moving party."[8]  A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim."[9]  An issue

---

[4] K.S.A. § 44-503 "extends the application of the Kansas Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured workers, but rather are 'statutory employers.'" *Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000).  Under the Act, when "payment of compensation is not secured or is otherwise unavailable or in effect, then the principal [contractor] shall be liable for the payment of compensation."  K.S.A. § 44-503(g).

[5] Doc. 17.

[6] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[7] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[8] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[9] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[10]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[11] Once the movant has met this initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[12] The non-moving party may not simply rest upon its pleadings to satisfy its burden.[13] Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant."[14] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[15] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[16]

"Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[17] Cross summary

---

[10] *Thomas v. Metro. Life Ins.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[11] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

[12] *Anderson*, 477 U.S. at 256.

[13] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[14] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[15] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[16] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[17] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

judgment motions should be evaluated as two separate motions.[18]  Just because the Court denies one does not require that it grant the other.[19]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[20]

## II.    Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to the non-moving party.

Cesar Rocha Flores ("Rocha") worked for his father, Robert Rocha Don Juan, also known as Anselmo Rocha ("Anselmo"), in the framing business beginning in 2018.  Anselmo's framing business was organized as Smart Framing LLC in the State of Kansas (Business Entity ID No. 8981185).  On July 15, 2019, the State of Kansas administratively forfeited Smart Framing LLC for failing to timely file an annual report.

On June 21, 2019, Rocha organized Smart Framing Construction LLC in the State of Kansas (Business Entity ID No. 9456666).  On January 17, 2020, LM issued a workers' compensation insurance policy to Smart Framing Construction LLC with an initial effective date of January 14, 2020.

On May 14, 2020, Anselmo died.  After his father's death, Rocha went to his insurance agent at Smart Insurance Agency and informed the agent that he was taking over his father's business.  Rocha told the agent that the business's operations were not changing, that he would

---

[18] *Banner Bank v. First Am. Title Ins.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[19] *Id.*

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

still be doing the same type of work, and that he needed the same insurance coverage for his operations that he and his father had before his father's death.

On October 15, 2020, the State of Kansas deemed Smart Framing Construction LLC administratively forfeited for failing to timely file its annual report by April 15, 2020.  On March 25, 2021, Rocha organized another Kansas limited liability company named Smart Framing LLC (Business Entity ID No. 9870304).

In January 2023, LM issued another workers' compensation insurance policy to Smart Framing Construction LLC, with a policy period of January 14, 2023, to January 14, 2024 (the "Policy").  The Policy defines an "Insured" as "an employer named in Item 1 of the Information Page."[21]  Item 1 of the Information Page lists "Smart Framing Construction LLC."[22] No other individual or entity is listed in Item 1.

In February 2023, Fastframe subcontracted construction work on a project located in Lake Winnebago, Cass County, Missouri, to Smart Framing LLC (the "Missouri Project"). National Liability insured Fastframe under a workers' compensation and employers' liability policy.  Castillo worked on the Missouri Project for Smart Framing LLC.  On February 27, 2023, while working on the Missouri Project, Castillo was injured on the job.

On March 3, 2023, and March 17, 2023, Fastframe issued payments to Smart Framing LLC for its work on the Missouri Project.  Castillo was paid for his work under the name "Angel Torres."[23]  Payment records provided for Castillo, all of which use the name "Angel Torres,"

---

[21] Doc. 78-6 at 26.

[22] *Id.* at 22.

[23] Doc. 76-5 at 64.

span February 5, 2022 through January 21, 2023, and show payments by checks from "Cesar A. Rocha-Flores DBA Smart Framing" or "Cesar Augusto Rocha Flores, Smart Framing."[24]

On March 7, 2023, LM sent a notice of cancellation of insurance to Smart Framing Construction LLC, stating that the cancellation would be effective April 11, 2023, for failing to comply with LM's requests to complete a final audit.

On March 13, 2023, Castillo filed a workers' compensation claim against Smart Framing LLC with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation relating to his injury on the Missouri Project. On March 16, 2023, Castillo filed a workers' compensation claim against Smart Framing Construction LLC with the Director of the Kansas Division of Workers' Compensation relating to the same injury.

In response to Castillo's Kansas workers' compensation claim, LM provided counsel to defend Smart Framing Construction LLC. Attorney John Pazell entered an appearance on behalf of Smart Framing Construction LLC and LM on March 31, 2023, and later moved to withdraw on June 13, 2025, because other counsel had entered their appearance.

On April 4, 2023, LM's adjuster made a note in Castillo's claim file to determine whether the insured employer name was "Cesar A. Rocha-Flores DBA Smart Framing" or "Smart Framing Construction," noting, "are these one in the same?"[25] LM's adjuster later indicated that Rocha had called and informed her that the employer name was listed as "Smart Framing Construction LLC."[26]

On August 11, 2023, LM's counsel sent Rocha a letter requesting that he appear for an examination under oath with respect to the workers' compensation claim made on behalf of

---

[24] *Id.* at 64–86.

[25] Doc. 79-8 at 3.

[26] *Id.* at 4.

Smart Framing Construction LLC regarding Castillo's February 27, 2023 injury. The letter stated, in part:

> By providing you with this letter, [LM] does not waive any term or condition of the policy of insurance in question. [LM] continues to reserve its rights under all of the terms and conditions of the policy as well as any rights or defenses available under the laws of the State of Kansas.
>
> Furthermore, [LM] retains its rights to demand full compliance by you and your representatives with any and all of the terms and conditions of the policy. No action taken by [LM], its affiliates, representatives, employees, attorneys and/or agents should be considered a waiver of any said rights or defenses the company has or may have.[27]

On August 9, 2024, one of Castillo's attorneys emailed National Liability's lawyers defending Fastframe in the Missouri workers' compensation claim and stated, in part, "in the event that LM escapes liability for [Castillo's claim], please also consider this a demand for each of you as well."[28]

## III. Discussion

In its Complaint, LM requests a declaratory judgment that the Policy provides no coverage for Castillo's workers' compensation claim and, therefore, LM has no obligation to defend or indemnify Smart Framing Construction LLC or to pay any further workers' compensation benefits with respect to that claim. Both LM and National Liability move for summary judgment.

Beginning with LM's motion, LM argues that it is entitled to summary judgment because the Policy identifies only Smart Framing Construction LLC as the insured employer, and Castillo was injured while working for Smart Framing LLC, not Smart Framing Construction LLC.

---

[27] Doc. 79-10 at 3–4.

[28] Doc. 73 at 5 (Pretrial Order Stipulation ¶ 2.a.xv.).

Thus, according to LM, the Policy does not provide coverage for Castillo's workers'

compensation claim.  In response, National Liability argues that Smart Framing LLC should be

treated as an insured under the Policy and that the Policy therefore provides coverage.

Accordingly, resolution of this issue turns on the interpretation of the Policy, which the parties

agree is governed by Kansas law.

Under Kansas law, the interpretation and legal effect of an insurance contract is a matter

of law to be determined by the Court.[29]  In construing an insurance policy, a court must consider

the instrument as a whole and interpret the policy language in such a way as to give effect to the

intent of the parties.[30]  "If an insurance policy's language is clear and unambiguous, it must be

taken in its plain, ordinary, and popular sense."[31]  In such a case, there is no need for judicial

interpretation or the application of rules of liberal construction.[32]

However, if the policy language is ambiguous, it must be construed in favor of the

insured.[33]  "To be ambiguous, a contract must contain provisions or language of doubtful or

conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[34]

"Ambiguity in a written contract does not appear until the application of pertinent rules of

interpretation to the face of the instrument leaves it genuinely uncertain which one of two or

more meanings is the proper meaning."[35]  The Court should not strain to create ambiguity where

---

[29] *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983); *Gerdes v. Am. Fam. Mut. Ins.*, 713 F. Supp. 2d 1290, 1295 (D. Kan. 2010) (quoting *Goforth v. Franklin Life Ins.*, 449 P.2d 477, 480 (Kan. 1969)).

[30] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002).

[31] *O'Bryan*, 56 P.3d at 792.

[32] *Gerdes*, 713 F. Supp. 2d at 1296.

[33] *Magnus v. Diamond State Ins.*, 101 F. Supp. 3d 1046, 1054 (D. Kan. 2015) (citing *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998)); *O'Bryan*, 56 P.3d at 793.

[34] *Gerdes*, 713 F. Supp. 2d at 1296 (quoting *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).

[35] *Id.* (quoting *Catholic Diocese*, 840 P.2d at 459).

none exists.[36]  "The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."[37]

Here, the Policy is clear and unambiguous.  It defines an "Insured" as "an employer named in Item 1 of the Information Page," and Item 1 names only "Smart Framing Construction LLC."[38]  No other individual or entity is listed as an insured.  Thus, under the plain language of the Policy, Smart Framing LLC is not an insured unless some other provision extends coverage to that separate entity.  And National Liability identifies no such provision.

Instead, National Liability makes three arguments.  First, National Liability argues that Smart Framing LLC is insured under the Policy because the change from Smart Framing Construction LLC to Smart Framing LLC was merely a name change and nothing about the business was otherwise changed.  In support of its argument, National Liability relies on language from *Legacy Christian Church v. Republic-Vanguard Insurance Co.*,[39] stating that "[d]oing business under another name does not create an entity distinct from the person operating the business."[40]  But the court made that statement in the context of analyzing "d/b/a" language in an insurance policy.[41]  There, the insurance policy listed "Steve Willman dba Craftman [sic] Exteriors" as the insured, and the issue was whether the policy provided coverage for Willman alone or whether it also provided coverage to his corporation, Craftsman Exteriors, Inc.[42]  The

---

[36] *Id.*

[37] *O'Bryan*, 56 P.3d at 793 (citing *First Fin. Ins. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998)).

[38] Doc. 78-6 at 22, 26.

[39] No. 2:20-CV-02474-EFM, 2022 WL 15432543 (D. Kan. Oct. 27, 2022).

[40] *Id.* at *3 (alteration in original) (quoting *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977)).

[41] *Id.*

[42] *Id.* at *4.

court concluded that, given the "d/b/a" language, the policy was "ambiguous and uncertain" as to the parties' intent because one reasonable interpretation was that the policy covered Willman personally and did not extend to the corporation under which he operated his business, while another reasonable interpretation was that the parties intended to extend coverage to Willman's corporation.[43]  Because the policy was ambiguous, the court construed it against the insurer and found that the policy extended coverage to Craftsman Exteriors, Inc.[44]

Here, however, there is no uncertainty in the Policy language about who is insured. Unlike in *Legacy Christian Church*, the Policy contains no "d/b/a" language, trade name, or other wording suggesting that the named insured might include a related entity operating under a similar business name.  Rather, the Policy unambiguously identifies only Smart Framing Construction LLC as the insured.  The Court therefore "shall not make another contract for the parties" by treating Smart Framing LLC as an insured, but instead "must enforce the contract as made."[45]

Furthermore, the summary judgment record does not support National Liability's characterization that the change from Smart Framing Construction LLC to Smart Framing LLC was merely a name change.  Smart Framing Construction LLC and Smart Framing LLC are separate Kansas limited liability companies with different business entity identification numbers. Smart Framing Construction LLC was administratively forfeited in October 2020, and Rocha later organized Smart Framing LLC as a separate limited liability company in March 2021. Thus, even viewing the facts in the light most favorable to National Liability, the record shows

---

[43] *Id.*

[44] *Id.*

[45] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002).

the formation of a separate legal entity, not a name change of the insured entity listed in the Policy.

Second, National Liability invokes the doctrine of successor liability and argues that Smart Framing LLC is insured under the Policy because it is the "successor corporation" to Smart Framing Construction LLC.  However, the doctrine of successor liability is inapplicable here.  The insured-insurer relationship is a matter of contract,[46] while the doctrine of successor liability is a matter of tort duty and liability.[47]  It is one thing to hold a successor corporation liable for its predecessor's torts; it is quite another to treat that successor as a party to an insurance contract it did not sign, under which it was not named, and for which it did not pay a premium, thereby placing the insurer in a contractual relationship with a stranger it never subjected to an underwriting analysis.  And National Liability cites no Kansas authority holding that a successor entity automatically acquires coverage rights under a workers' compensation policy issued to its predecessor.  The Court declines to extend successor-liability principles in that manner here.

Third and finally, National Liability argues that LM waived, or should be equitably estopped from asserting, its position that the Policy does not provide coverage for Castillo's workers' compensation claim because LM undertook Smart Framing Construction LLC's defense in the Kansas workers' compensation proceeding and initially handled the claim as covered under the Policy.  But National Liability's argument raises a threshold issue: whether a

---

[46] *Shelter Mut. Ins. v. Williams ex rel. Williams*, 804 P.2d 1374, 1379 (Kan. 1991) ("An insurance policy is a contract.").

[47] *See Wells Fargo Vendor Fin. Servs., LLC v. Nationwide Learning, LLC*, 429 P.3d 221, 237 (Kan. Ct. App. 2018) ("The whole purpose of imposing liability on a successor corporation or business 'is to protect third parties, either creditors or tort claimants, from being left without recourse when a corporation or partnership either sells all its assets or changes the form in which it does business.'" (quoting *Canadyne-Georgia Corp. v. Cleveland*, 72 F. Supp. 2d 1373, 1381 (M.D. Ga. 1999))).

non-party to an insurance contract has standing to invoke equitable remedies, such as waiver and estoppel, to obtain coverage under a policy it did not purchase, sign, or have the right to enforce. The Kansas Supreme Court has not had an opportunity to decide this precise issue, so the Court must predict how it would rule.[48]  In doing so, the Court must give "proper regard to relevant rulings of other courts of the State,"[49] and "may also consider appellate decisions in other states with similar legal principles and the general weight and trend of authority in the relevant area of law."[50]  The Court has found no Kansas authority addressing whether a non-party to an insurance contract has standing to assert waiver or estoppel under another insurer's policy.  But courts in other jurisdictions have rejected that position.

In *Western Casualty & Surety Co. v. American National Fire Insurance Co.*,[51] the plaintiff insurer argued that the defendant insurer had waived, or was estopped from denying, coverage under a workers' compensation policy the defendant had issued to a third party—a policy to which the plaintiff was not a party.[52]  The South Dakota Supreme Court rejected that argument, holding that "[o]nly the parties to the contract of insurance, or their privies, can claim the benefit of a waiver or an estoppel," and that the plaintiff insurer was "a stranger to the policy" and therefore "not a proper party to assert the claim of a waiver or an estoppel."[53]

---

[48] *Royal Maccabees Life Ins. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005) ("A federal court sitting in diversity must apply state law as propounded by the forum's highest court. Absent controlling precedent, the federal court must attempt to predict how the state's highest court would resolve the issue." (citations omitted)).

[49] *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 765 (10th Cir. 2019) (quoting *Stickley v. State Farm Mut. Auto. Ins.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).

[50] *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 948 (10th Cir. 2018) (citation modified).

[51] 318 N.W.2d 126 (S.D. 1982).

[52] *Id.* at 128.

[53] *Id.*

Likewise, in *Michigan Millers Mutual Insurance Co. v. Travelers Indemnity Co.*,[54] the United States District Court for the Eastern District of Michigan rejected an insurer's attempt to use waiver and estoppel to require another insurer to cover a non-insured entity.[55]  The court reasoned that waiver and estoppel could not be used to obtain coverage "where the party seeking to benefit from waiver or estoppel is not even an insured in the underlying insurance contract."[56]

And in *Donovan v. New York Casualty Co.*,[57] the Pennsylvania Supreme Court similarly explained that "a stranger to a contract of insurance is not in a position to invoke an estoppel or waiver of a condition in the policy."[58]  The North Dakota Supreme Court reached the same conclusion in *Secura Supreme Insurance Co. v. Differding*,[59] holding that "[l]itigants cannot claim estoppel based on policies to which they are not a party; nor can they claim waiver of a provision in a policy they have no right to enforce."[60]

Given "the general weight and trend of authority," the Court finds these decisions persuasive and predicts that the Kansas Supreme Court would adopt the same rule.[61]  National Liability is not an insured under the Policy, is not a party to the Policy, and has not shown that it is in privity with Smart Framing Construction LLC.  Nonetheless, National Liability argues that it and its insured, Fastframe, are third-party beneficiaries of the Policy and therefore may invoke waiver and estoppel to obtain coverage.

---

[54] No. 16-11767, 2016 WL 7100539 (E.D. Mich. Dec. 6, 2016).

[55] *Id.* at *6–7.

[56] *Id.* at *7.

[57] 94 A.2d 570 (Pa. 1953).

[58] *Id.* at 571.

[59] 988 N.W.2d 580 (N.D. 2023).

[60] *Id.* at 585.

[61] *See Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 948 (10th Cir. 2018).

"Kansas law allows a qualified third-party beneficiary plaintiff to enforce a contract expressly made for his or her benefit even though he or she was not a party to the transaction."[62] Kansas case law distinguishes third-party contract beneficiaries into classes of (1) intended beneficiaries and (2) incidental beneficiaries.[63] "A beneficiary may sue to enforce a contract made by others only if he is an *intended* beneficiary, *i.e.*, one who the contracting parties intended should receive a direct benefit from the contract."[64] "In determining whether a particular person is an intended beneficiary of a contract, the court applies the general rules for construction of contracts."[65]

"A third-party beneficiary does not need to be personally named in the contract to have standing, as long as he or she is a member of a designated class or identifiable as a benefitted person."[66] "The party asserting it's a third-party beneficiary of a contract bears the burden 'of establishing standing to assert claims under a third party beneficiary theory.'"[67] And "[b]efore the issue is reached of whether a third party may directly enforce a contract from which he would benefit, the third party must show the existence of some provision in the *contract* that operates to his benefit."[68]

Here, National Liability has not identified any provision in the Policy that operates for its direct benefit. As previously discussed, the Policy identifies only Smart Framing Construction

---

[62] *Tri-State Truck Ins. v. First Nat'l Bank of Wamego*, 535 F. App'x 653, 660 (10th Cir. 2013) (quoting *State ex rel. Stovall v. Reliance Ins.*, 107 P.3d 1219, 1230–31 (Kan. 2005)).

[63] *Id.* (citing *Noller v. GMC Truck & Coach Div.*, 772 P.2d 271, 275 (Kan. 1989)).

[64] *Id.* (emphasis added) (citing *Noller*, 772 P.2d at 275).

[65] *Byers v. Snyder*, 237 P.3d 1258, 1265 (Kan. Ct. App. 2010).

[66] *Id.* at 1266.

[67] *Eucalyptus Real Est., LLC v. Innovative Work Comp Sols., LLC*, 676 F. Supp. 3d 938, 969 (D. Kan. 2023) (quoting *Stovall*, 107 P.3d at 1231).

[68] *Stovall*, 107 P.3d at 1231 (emphasis added) (quoting *Hartford Fire Ins. v. Western Fire Ins.*, 597 P.2d 622, 632 (Kan. 1979)).

LLC as the insured and contains no mention of National Liability or Fastframe. And rather than point to language in the Policy, National Liability relies on K.S.A. § 44-503 and argues that, "[i]t is very clear that under the statutory scheme of K.S.A. 44-503," a general contractor is an "intended third party beneficiar[y]" of its subcontractor's workers' compensation policy because the general contractor may be liable as a "contingent employer" if the subcontractor fails to secure workers' compensation coverage.[69]

K.S.A. § 44-503 makes a principal contractor liable to pay workers' compensation benefits to a subcontractor's employee in certain circumstances, provides that a principal who pays compensation is entitled to indemnity from the person who would have been liable independently of § 44-503, and allows a principal contractor sued by a subcontractor's worker to implead the subcontractor. It also provides that when the subcontractor has secured workers' compensation coverage, the principal contractor is not liable for compensation that would otherwise be imposed under the statute. But nothing in § 44-503 purports to alter the terms of a workers' compensation insurance policy, expand the policy's definition of "insured," or convert a principal contractor or its insurer into an intended third-party beneficiary of a subcontractor's policy.

At most, § 44-503 may give Fastframe a statutory defense to liability or a statutory right of indemnity against the party independently liable for compensation. It does not give Fastframe, or National Liability as Fastframe's insurer, the right to invoke waiver or estoppel to obtain coverage under an insurance contract to which neither is a party. Thus, merely because Fastframe may be deemed Castillo's statutory employer, and National Liability may be exposed

---

[69] Doc. 78 at 22.

to coverage obligations as Fastframe's insurer, that statutory exposure does not make either entity an intended third-party beneficiary of the Policy.

If the Policy were to cover Castillo's claim, Fastframe and National Liability would benefit only because their own potential exposure would be reduced or eliminated. That is an incidental consequence of coverage, not evidence that LM and Smart Framing Construction LLC contracted with the intent to directly benefit Fastframe or National Liability. Therefore, because National Liability is neither a party to the Policy, nor in privity with a party to the Policy, nor an intended third-party beneficiary of the Policy, it lacks standing to invoke waiver or equitable estoppel to preclude LM from asserting that the Policy does not provide coverage for Castillo's workers' compensation claim.

Accordingly, the Court concludes that LM has shown that no reasonable trier of fact could find that Smart Framing LLC was an insured under the Policy. The uncontroverted facts show that Castillo was working for Smart Framing LLC, not Smart Framing Construction LLC, when he was injured. Thus, the Policy does not provide coverage for Castillo's workers' compensation claim, and LM has no obligation to defend or indemnify Smart Framing Construction LLC or to pay any further workers' compensation benefits with respect to that claim. LM's Motion for Summary Judgment is therefore granted. And having found that LM is entitled to summary judgment because the Policy provides no coverage for Castillo's workers' compensation claim, National Liability's motion for summary judgment, which rests on the contrary contention that the Policy does provide coverage for that claim, is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that LM Insurance Corporation's Motion for Summary Judgment (Doc. 75) is **granted** and National Liability & Fire Insurance

Company's Motion for Summary Judgment (Doc. 77) is **denied**.  The Clerk is directed to enter

judgment in favor of LM Insurance Corporation and to terminate this action.

      **IT IS SO ORDERED.**

      Dated: May 14, 2026

                                    S/ Julie A. Robinson
                                    JULIE A. ROBINSON
                                    UNITED STATES DISTRICT JUDGE